UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -:
JUNMIN SHEN and YUZHU WANG,                 :   16 Civ. 2015 (GBD) (JCF)
on behalf of themselves and others          :
similarly situated,                         :       REPORT AND
                                            :       RECOMMENDATION
              Plaintiffs,                   :
                                            :
     - against -                            :
                                            :
JOHN DOE CORPORATION, d/b/a FRESCO          :
TORTILLAS, DAN Q. LIU, JIAN HUI             :
CHEN, SU JIANG, ZHENG XIAO, and             :
GENE JONES,                                 :
                                            :
              Defendants.                   :
- - - - - - - - - - - - - - - - - - -:



TO THE HONORABLE GEORGE B. DANIELS, U.S.D.J.:

The plaintiffs Junmin Shen and Yuzhu Wang bring this action on behalf of themselves and others similarly situated pursuant to the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. § 201 et seq., and the New York Labor Law (the "NYLL"), N.Y. Lab. Law § 650 et seq. The defendants move for summary judgment on the FLSA claim and dismissal of the FLSA and NYLL claims. For the reasons set forth below, I recommend that the motion be denied.[1]

Background

The plaintiffs filed their complaint in this action on March 17, 2016, alleging that the defendants knowingly and willfully

---

[1] The defendants also argue that this Court should decline to exercise jurisdiction over the NYLL claim in the event that summary judgment or dismissal of the FLSA claim is granted. Because I recommend that both summary judgment and dismissal be denied, I do not address this contention.

1

failed to pay them the minimum wage and overtime compensation. (Complaint ("Compl."), ¶¶ 33-34). Both named plaintiffs were employed as deliverymen at the defendant John Doe Corporation d/b/a Fresco Tortillas. (Compl., ¶¶ 9-10). The individual defendants owned and operated Fresco Tortillas. (Compl., ¶¶ 11-27).

Shen worked at Fresco Tortillas from August 26, 2014, through January 31, 2016. (Compl., ¶ 41). Wang worked at Fresco Tortillas from August 2012 through March 3, 2016. (Compl., ¶ 56). Throughout the duration of their employment, they were scheduled to work six twelve-hour shifts -- 11:00am to 11:00pm -- totaling seventy-two hours per week. (Compl., ¶¶ 42, 57). Shen was scheduled to work Sunday through Friday (Compl., ¶ 42); Wang was scheduled to work Monday through Saturday (Compl., ¶ 57). They did not receive fixed meal breaks or other breaks during their shifts. (Compl., ¶¶ 44-45, 59-60). They were both compensated at a flat rate of $1,100 per month and were not paid overtime for work in excess of forty hours per week (Compl., ¶¶ 43, 46, 58, 61). They were never informed of their hourly pay rate or of deductions from their pay credited toward the minimum wage based on tips they received from deliveries. (Compl., ¶¶ 46, 61).

The defendants move (1) for summary judgment on the FLSA claim on the ground that the plaintiffs are not covered by the statute; and (2) to dismiss the FLSA and NYLL claims on the ground that the complaint fails to state a claim on which relief can be granted.

Discussion

    A.    Summary Judgment

        1.    Standard

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); accord Doninger v. Niehoff, 642 F.3d 334, 344 (2d Cir. 2011). A dispute is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); accord SCR Joint Venture L.P. v. Warshawsky, 559 F.3d 133, 137 (2d Cir. 2009). A material fact is one that "might affect the outcome of the suit under the governing law." Roe v. City of Waterbury, 542 F.3d 31, 35 (2d Cir. 2008) (quoting Anderson, 477 U.S. at 248). In assessing whether there is a genuine issue of material fact, "a court must 'construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant.'" Seeman v. Local 32B-32J, Service Employees Union, 769 F. Supp. 2d 615, 620 (S.D.N.Y. 2011) (quoting Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003)).

The moving party bears the initial burden of identifying those portions of the record that demonstrate "the absence of a genuine

issue of material fact," Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986), following which the opposing party must come forward with "specific facts showing that there is a genuine issue for trial," Wrobel v. County of Erie, 692 F.3d 22, 30 (2d Cir. 2012) (emphasis omitted) (quoting Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)). The parties can support their claims with documents, stipulations, affidavits, or other discovery materials. See Fed. R. Civ. P. 56(c)(1)(A). However, "only admissible evidence need be considered by the trial court in ruling on a motion for summary judgment." Presbyterian Church of Sudan v. Talisman Energy, Inc., 582 F. 3d 244, 264 (2d Cir. 2009) (quoting Raskin v. Wyatt Co., 125 F.3d 55, 65 (2d Cir. 1997)).

    2.    Analysis

The FLSA's minimum wage and overtime provisions apply to employees who are (1) "engaged in commerce or in the production of goods for commerce" or (2) "employed in an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 207(a)(1); see also Bowrin v. Catholic Guardian Society, 417 F. Supp. 2d 449, 457 (S.D.N.Y. 2006). These two categories of coverage are commonly known as "individual" and "enterprise" coverage, respectively. See Tony & Susan Alamo Foundation v. Secretary of Labor, 471 U.S. 290, 295 n.8 (1985); Jacobs v. New York Founding Hospital, 577 F.3d 93, 96 (2d Cir. 2009). The

4

defendants argue that the plaintiffs do not qualify for either category of coverage. (Letter of Brian P. Fredericks dated July 15, 2016, ("Def. Memo.") at 3-5). The plaintiffs do not address individual coverage but contend that there is a genuine dispute of material fact as to whether they qualify for enterprise coverage. (Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment ("Pl. Rule 56 Memo.") at 2-6).

An employee qualifies for enterprise coverage if his or her employer is an "enterprise" under the FLSA, meaning (1) it "has employees engaged in commerce or in the production of goods for commerce, or [] has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person;" and (2) its "annual gross volume of sales made or business done is not less than $500,000." 29 U.S.C. § 203(s)(1)(A); accord Boekemeier v. Fourth Universalist Society in the City of New York, 86 F. Supp. 2d 280, 285 (S.D.N.Y. 2000). The first prong is "rarely difficult to establish." Jacobs, 577 F.3d at 99 n.7. It is satisfied as long as the employer purchases or uses supplies that have at some point moved in interstate commerce. See, e.g., Yang Li v. Ya Yi Cheng, No. 10 CV 4664, 2012 WL 1004852, at *5 (E.D.N.Y. March 23, 2012) (restaurant satisfies first prong because it purchased "rice and other ingredients" that "almost certainly crossed state lines before being purchased"); Velez v. Vassallo, 203 F. Supp. 2d 312, 328 (S.D.N.Y. 2002)

5

("[E]ven a 'local laundry' is covered if the soap it uses moved in interstate commerce."). This "leads to the result that virtually every enterprise in the nation doing the requisite dollar volume of business is covered by the FLSA." <u>Archie v. Grand Central Partnership, Inc.</u>, 997 F. Supp. 504, 530 (S.D.N.Y. 1998) (quoting <u>Dunlop v. Industrial America Corp.</u>, 516 F.2d 498, 501-02 (5th Cir. 1975)).

Here, the plaintiffs allege that they regularly handled cleaning supplies, rice, and beverages such as Coca Cola and Sprite that originated from out-of-state or international sources. (Affidavit of Junmin Shen dated July 19, 2016 ("Shen Rule 56 Aff."), ¶¶ 23-24; Affidavit of Yuzhu Wang dated July 19, 2016 ("Wang Rule 56 Aff."), ¶¶ 22-23). Those facts, which the defendants do not contest, are sufficient for the plaintiff to survive summary judgment on the first prong of enterprise coverage.

The defendants' motion for summary judgment focuses on the second prong, arguing that Fresco Tortillas "do[es] not meet the requirement of having gross annual sales of at least $500,000." (Def. Memo. at 4). In support of that assertion, they provide copies of federal income tax returns reflecting gross annual sales of $241,472 from July 2013 through June 2014, $313,892 from July 2014 through June 2015, and $299,576 from July 2015 through June 2016. (Internal Revenue Service Form 1120 ("IRS Form 1120"), 2013, 2014, attached as Exh. A to Def. Memo.; IRS Form 1120, 2015,

attached as Exh. A to Letter of Brian P. Fredericks dated Oct. 27, 2015 ("Reply")). An affidavit of the defendant Dan Q. Liu, an owner of Fresco Tortillas, attests to the authenticity of the federal forms. (Undated Declaration of Dan Q. Liu, attached as Exh. B to Letter of Brian P. Fredericks dated Dec. 7, 2016, ¶¶ 3-4). The defendants also provide copies of New York State quarterly sales tax filings from December 2013 through November 2015; like the federal returns, they purport to "show[] that Fresco never achieved an annual gross business volume approaching $500,000." (Def. Memo. at 4; New York State Department of Taxation and Finance Quarterly ST-100 Forms, attached as Exh. B to Def. Memo.). Finally, the defendants provide copies of bank statements from July 2015 through October 2016 with total monthly deposits ranging from $17,451.66 to $24,581.89; when added over twelve months, those deposits total "a very close approximation of the Restaurant's stated gross annual receipts [] reflected on its tax returns." (Reply at 2; Citibank Account Statements, attached as Exh. C to Reply). This documentation, though substantial, fails to establish the absence of a genuine dispute of material fact as to whether Fresco Tortillas does $500,000 of business annually.

First, "[t]here is substantial precedent suggesting that tax returns are not dispositive and the veracity of those documents can be questioned by a Plaintiff." Jia Hu Qian v. Siew Foong Hui, No. 11 Civ. 5584, 2013 WL 3009389, at *3 (S.D.N.Y. June 14, 2013).

7

Courts in this Circuit "have expressed skepticism about their reliability, especially where the returns are unauthenticated or where they conflict with other evidence." Shu Lan Chen v. Gypsophila Nail & Spa, No. 15 Civ. 2520, 2015 WL 3473510, at *3 (S.D.N.Y. June 2, 2015). Here, the federal and state returns are not signed by any of the defendants or accompanied by affidavits from tax preparers attesting to their veracity. These deficiencies, though less severe with respect to the federal returns in light of Mr. Liu's affidavit, call into question the reliability of the tax returns. See Rocha v. Bakhter Afghan Halal Kababs, Inc., 44 F. Supp. 3d 337, 348 (E.D.N.Y. 2014) ("The absence of a signature on the tax returns, combined with the absence of an affidavit from the tax preparer or from the owner of the business verifying the authenticity of the returns caution against presuming their authenticity."); Monterossa v. Martinez Restaurant Corp., No. 11 Civ. 3689, 2012 WL 3890212, at *4 (S.D.N.Y. Sept. 7, 2012) ("[T]here is good reason to be cautious in relying on Defendants' tax returns because . . . the submitted returns are unsigned and unaccompanied by a statement or affidavit of the tax preparer.").

Second, the probative value of the bank statements is limited because they provide an incomplete record of Fresco Tortillas' deposits during the plaintiffs' terms of employment. They date back to July 2015, and thus cover only seven of the seventeen

months of Shen's employment and eight of the forty-four months of Wang's employment. It is also worth noting that they were submitted in the defendants' reply to the plaintiffs' opposition motion, meaning the plaintiffs did not have an opportunity to contest their veracity. Therefore, the tax returns and bank statements do not satisfy the defendants' burden of establishing the absence a genuine dispute as to whether Fresco Tortillas does $500,000 of business annually.

Even if they did, the plaintiffs have come forward with facts that establish a genuine issue for trial. Their sworn affidavits contradict the gross sales information in the tax returns and bank statements, estimating that (1) they made approximately seventy deliveries per day at an average price of $18.00 to $19.00, totaling $472,675 per year; (2) fifty customers per day ordered food to-go at an average price of $18.00 to $19.00, totaling $337,625 per year; and (3) twenty customers per day ate in the restaurant at an average price of $13.00 to $14.00, totaling $98,550 per year.[2] (Pl. Rule 56 Memo. at 5; Shen Rule 56 Aff., ¶¶

---

[2] The plaintiffs arrived at these totals by multiplying the average price (e.g., $18.50 where the affidavits state an average price of $18.00 to $19.00) by the number of customers per day by the number of days in a year (365). Thus, the plaintiffs' accounting assumes the restaurant was open 365 days a year. Neither the plaintiffs nor the defendants directly state how many days per year the restaurant was open. Drawing all inferences in the plaintiffs' favor, as the Court must on a motion for summary judgment, this assumption is reasonable because the complaint alleges that at least one of the plaintiffs was scheduled to work

12-13, 16-17; Wang Rule 56 Aff. ¶¶ 11-12, 15-16). Added together, that would total $908,850 of business annually.

The plaintiffs' statements regarding the restaurant's gross sales "may be self-serving or otherwise inaccurate." Monterossa, 2012 WL 3890212, at *4. Still, courts in this Circuit have credited similar statements on motions for summary judgment where they are based on personal knowledge and observation rather than mere speculation. Compare Ying Shun Zhao v. Sunny 39 Hotel Corp., No. 14 CV 1847, 2015 WL 5307716, at *4 (E.D.N.Y. Sept. 10, 2015) (denying summary judgment because "a reasonable juror could credit [the plaintiff's] estimates . . . of the occupancy rates of the hotels" where he worked), with Xi Dong Gao v. Golden Garden Chinese Restaurant, Inc., No. 13 CV 4761, 2014 WL 8843301, at *7 (E.D.N.Y. Dec. 16, 2014) (granting summary judgment where the plaintiff's estimates of the restaurant's revenue were "mere guesses" based on purported knowledge of the Chinese restaurant industry). Such statements weigh more heavily where, as here, the restaurant "would gross well over $500,000 annually even if Plaintiffs considerably overestimated [its] daily earnings." Monterossa, 2012 WL 3890212, at *4. Accordingly, a reasonable juror could credit the plaintiffs' estimates of the restaurant's gross sales, particularly in light of concerns about the authenticity the tax

---

on every day of the week and that the plaintiffs were scheduled to work every week of the year. (Compl., ¶¶ 41-42, 56-67).

returns and the limited probative value of the bank statements. Thus, the defendants have not established the absence of a genuine dispute of material fact as to whether the plaintiffs qualify for enterprise coverage under the FLSA, and summary judgment should be denied.[3]

B. Dismissal

1. Standard

Motions to dismiss for failure to state a claim on which relief can be granted are governed by Rule 12(b)(6) of the Federal Rules of Civil Procedure. To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The court's charge in ruling on a 12(b)(6) motion to dismiss "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." GVA Market Neutral Master Ltd. v. Veras Capital Partners Offshore Fund, Ltd., 580 F. Supp. 2d 321, 327 (S.D.N.Y. 2008) (quoting Eternity Global Master Fund Ltd. v. Morgan Guaranty Trust Co. of New York, 375

---

[3] Because there is a genuine dispute of material fact as to whether the plaintiffs qualify for enterprise coverage, it is unnecessary to consider whether there is also a genuine dispute as to individual coverage.

F.3d 168, 176 (2d Cir. 2004)). The court must construe the complaint in the light most favorable to the plaintiff, "taking its factual allegations to be true and drawing all reasonable inferences in the plaintiff's favor." Harris v. Mills, 572 F.3d 66, 71 (2d Cir. 2009).

### 2. Analysis

The defendants' motion to dismiss relies on Lundy v. Catholic Health System of Long Island Inc., 711 F.3d 106 (2d Cir. 2013), which holds that "in order to state a plausible FLSA overtime claim, a plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours." Id. at 114. The defendants argue that "the Complaint does not allege precisely when, or at what point during their alleged employment, Plaintiffs worked more than 40 hours and does not point to any particular workweek . . . during which Plaintiffs worked uncompensated time more than 40 hours." (Def. Memo at 5).

Lundy involved three plaintiffs. One alleged that she "typically" worked 37.5 hours per week but "occasionally" worked an additional 12.5-hour shift. Id. at 114-15. She also alleged that her thirty-minute meal breaks were "typically" missed or interrupted and that she "typically" worked fifteen minutes of uncompensated time before and after her shifts. Id. at 115. Finally, she alleged that she "typically" attended trainings such as a monthly thirty-minute staff meetings and an "average" of ten

12

hours per year of respiratory therapy training. Id. The Second Circuit dismissed her claims because she failed to allege that "she ever <u>completely</u> missed <u>all three</u> meal breaks in a week, or that she also worked a full 15 minutes of uncompensated time around <u>every shift</u>." Id. Even if she did, the Second Circuit calculated that "she would have alleged a total 39 hours and 45 minutes worked." Id. The additional 12.5-hour shifts and trainings "could theoretically put her over the 40-hour mark in one or another unspecified week . . . but her allegations supply nothing but low-octane fuel for speculation." Id.

The second plaintiff alleged that she "typically" worked thirty hours per week in four shifts, but worked five to six shifts "approximately twice per month," which increased her total to 37.5 to forty-five hours per week. Id. She also alleged that her thirty-minute meal breaks were "typically" missed or interrupted, she "typically" worked thirty uncompensated minutes before her shifts, and she "often" worked as many as two uncompensated hours after her shifts. Id. As with the first plaintiff, the Second Circuit dismissed her claims because this language "invited speculation [that] does not amount to a plausible claim under FLSA." Id. The third plaintiff's claims were dismissed because

13

he "conceded . . . that he never worked over forty hours in any given week."[4] Id.

Here, the plaintiffs allege that they worked six twelve-hour shifts -- totaling seventy-two hours per week -- "[a]t all relevant times" to the complaint (Compl., ¶¶ 42, 57) (emphasis added). They were paid at a flat rate of $1,100 per month without additional compensation for hours worked in excess of forty per week. (Compl., ¶¶ 43, 58). Thus, the complaint alleges that the plaintiffs worked thirty-two hours of overtime and were not compensated for that time in every week that they worked for the defendants. These are not opaque allegations of meal breaks "typically" missed, extra shifts "occasionally" worked, or uncompensated time "often" worked after shifts. Rather, the complaint contains the specific language regarding numerous weeks of uncompensated overtime that the Second Circuit found lacking in

---

[4] The defendants cite several additional cases that apply Lundy to dismiss claims involving similar facts. See, e.g., Dejesus v. HF Management Services, LLC, 726 F.3d 85, 89 (2d Cir. 2013) (affirming dismissal of FLSA overtime claim where the plaintiff "did not estimate her hours in any or all weeks"); Nakahata v. New York-Presbyterian Healthcare System, Inc., 723 F.3d 192, 201 (2d Cir. 2013) (affirming dismissal "absent any allegation that Plaintiffs were scheduled to work forty hours in a given week"); Oram v. Soulcycle LLC, 979 F. Supp. 2d 498, 507 (S.D.N.Y. 2013) (dismissing claim where the complaint "fail[ed] to state Plaintiff's actual rate of pay . . . or his total number of hours worked per week.").

Lundy. Therefore, the defendants' motion to dismiss should be denied.

## Conclusion

For the reasons discussed above, I recommend that the defendants' motion (Docket no. 19) be denied.[5] Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the Chambers of the Honorable George B. Daniels, Room 1310, 500 Pearl Street, New York, New York 10007, and to the Chambers of the undersigned, Room 1960, 500 Pearl Street, New York, New York 10007. Failure to file timely objections will preclude appellate review.

Respectfully submitted,

*/s/ James C. Francis IV*
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated:   New York, New York
         December 13, 2016

---

[5] The docket sheet reflects "motions" at Docket nos. 28 and 33; these are actually the plaintiffs' papers in opposition to the defendants' motion.

Copies transmitted this date to:

John Troy, Esq.
Kibum Byum, Esq.
Troy Law PLLC
41-25 Kissena Blvd., Suite 119
Flushing, NY 11355

Brian P. Fredericks, Esq.
Law Office of Brian P. Fredericks, PC
39-07 Prince St., 6E
Flushing, NY 11354