USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 11/26/2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
JUNMIN SHEN and YUZHU WANG on behalf  :        16-cv-2015 (RWL)
of themselves and others similarly situated,  :
                                                           :
                        Plaintiffs,          :
                                                           :
            - against -                      :        **DECISION AND ORDER**
                                                           :
NUMBER ONE FRESCO TORTILLAS, INC.  :
d/b/a FRESCO TORTILLAS; DAN QING LIU,  :
a/k/a Danqing Liu, a/k/a Dan Q. Liu, JIAN HUI  :
CHEN, a/k/a Jianhui Chen, a/k/a Jian H. Chen, :
SU JIANG, ZHENG XIAO, and GENE JONES,  :
                                                           :
                        Defendants.          :
------------------------------------------------------------X

**ROBERT W. LEHRBURGER, United States Magistrate Judge.**

        Plaintiffs, Junmin Shen and Yuzhu Wang, brought this action to recover unpaid

wages, overtime wages, and other damages under the Fair Labor Standards Act (the

"FLSA"), 29 U.S.C. § 201 *et seq.*, and the New York Labor Law (the "NYLL"), N.Y. Labor

Law § 650 *et seq.*  The Defendants are Fresco Number One Tortillas ("Fresco Tortillas")

and its owners, Defendants Dan Liu and Jian Liu (collectively, with Fresco Tortillas,

"Defendants").[1]  Specifically, Plaintiffs seek to recover (i) unpaid minimum and overtime

wages; (ii) spread of hours damages; (iii) damages for failure to provide an annual notice

of wage rate; (iv) damages for failure to provide wage statements and failing to maintain

and preserve those payroll records; (v) equipment reimbursement; (vi) liquidated

damages; and (viii) costs and reasonable attorneys' fees, as well as; (ix) prejudgment

interest at the rate of nine percent per annum on their NYLL claims.

---

[1] Plaintiffs also named Su Jiang, Zheng Xiao, and Gene Jones in their Complaint but have
not pursued their claims against those individuals.

1

On July 27, 2016, Defendants moved for summary judgment and in the alternative, to dismiss the Complaint.  On December 13, 2016, the Honorable James C. Francis IV, United States Magistrate Judge, denied Defendants' motion to dismiss the claims.  *Shen v. John Doe Corporation*, No. 16 Civ. 2015, 2016 WL 7217850, *5 (S.D.N.Y. Dec. 13, 2016).  The Report and Recommendation was adopted on January 11, 2017.  (ECF No. 46.)  On August 29, 2017, the parties consented to the jurisdiction of this Court.  (ECF No. 60.)

This Court presided over a two-day bench trial from April 19 to 20, 2018.  The Court observed the demeanor and testimony of the witnesses and has considered the parties' submissions and arguments as well as the trial record.  In accordance with Federal Rule of Civil Procedure 52(a), this Memorandum Opinion and Order constitutes the Court's findings of fact and conclusions of law.  To the extent any finding of fact includes conclusions of law, it is deemed a conclusion of law and vice versa.

For the following reasons, the Court finds that Plaintiffs are entitled to recover damages based on (i) violations of the NYLL's minimum wage and overtime provisions; (ii) the NYLL's "spread of hours" provisions; and (iii) violations of the NYLL's notice and recordkeeping and wage statement provisions.

<u>Findings of Fact</u>

The Court finds the following facts have been proven by a preponderance of the evidence.

A.  The Parties

Defendant Fresco Tortillas is a Mexican restaurant located in Manhattan.  (S. ¶ 1.)[2]  Each Plaintiff is a former delivery worker for Fresco Tortillas.  (S. ¶ 3.)  At all relevant times, Fresco Tortillas was owned and operated by Jian Hui Chen and his wife, Dan Qing Liu.  (S. ¶ 4; Tr. (Liu) 57; (Chen) 182-83.)[3]  Chen and Liu both worked full-time for the restaurant and had the power to hire and fire employees.  (Tr. (Chen) 182-83.)  Chen was responsible for managing the restaurant, which including taking orders, cooking, cleaning, making deliveries, and directing the employees.  (Tr. (Chen) 103.)  From time to time, Liu also made deliveries.  (Tr. (Chen) 160-61.)  Liu and Chen were both involved in the financial aspects of the company, including the preparation and submission of Fresco Tortillas' tax returns.  (Tr. (Liu) 57; (Chen) 104, 117.)  In connection with the tax returns, Liu and Chen testified that they submitted information concerning the restaurant's internet sales, rent costs, credit card statements, receipts for expenses, and daily cash receipts to their accountant.  (Tr. (Liu) 63-65, (Chen) 117.)  Liu, however, had exclusive responsibility for managing the restaurant's corporate bank account.  (Tr. (Liu) 65-68, 83-86; (Chen) 104.)

B.  Fresco Tortillas' Operations

Fresco Tortillas was open for business from 11:00 a.m. to 10:30 p.m. every day of the year, with the exception of certain major holidays such as Independence Day,

---

[2] "S." refers to the Stipulation of Facts and Laws in the parties' Joint Pretrial Order.  (ECF No. 61.)

[3] "Tr." refers to the Trial Transcript dated April 19-20, 2018.  (ECF Nos. 77, 79.)

Thanksgiving, Christmas, and Martin Luther King Jr. Day.  (Tr. (Chen) 199, 204, 207.)[4]
During the relevant period of time, the restaurant typically employed a cashier and one to
three delivery people, not including Chen or Liu.  (Tr. (Chen) 105.)   On average, the
cashier received $2,500 per month in salary, and Plaintiffs, collectively, received $2,500
per month.  (Tr. (Wang) 14-17; (Liu) 76, 87; (Chen) 184.)   Not including the individual
Defendants' salaries, Liu testified that Fresco Tortillas paid roughly $60,000 in wages per
year during the relevant time period.  (Tr. (Liu) 87-88.)  Shen and Wang were both paid
exclusively in cash.  (Tr. (Wang) 14; (Shen) 38; (Liu) 72.)

Fresco Tortillas was a small establishment, with space for no more than ten eat-in
patrons at a time.  (Tr. (Liu) 74; (Chen) 105-06.)  The restaurant also offered pick-up and
delivery service.  (Tr. (Chen) 108-10.)  Orders could be made either in-person, over the
phone, or via the internet.  (Tr. (Wang) 26-29.)   On average, Fresco Tortillas served
approximately twenty dine-in patrons per day and approximately fifty pick-up orders per
day.  (Tr. (Wang) 24; (Shen) 43-44; (Chen) 148-50.)   Wang and Shen testified that,
collectively, they made roughly seventy to eighty deliveries per day.[5]  (Tr. (Wang) 17-18;
(Shen) 41.)  The minimum cost for delivery orders was $8.50, which was also the cost of
the restaurant's most popular dish, the "special combo."  (Tr. (Chen) 107, 203.)   The

---

[4] Chen testified that the restaurant was sometimes closed on these holidays, although
Fresco Tortilla's records do not fully support this assertion.  *See, e.g.*, Ex. 4 at D000289,
D000345 (indicating that the restaurant was open on Independence Day in 2015 and
2016).

[5] While Chen initially testified that the average number of deliveries per day was around
fifty to sixty, he later acknowledged that he was not sure of the exact number of deliveries
per day and that Plaintiffs were more likely to know the number of delivery orders they
had been responsible for.  (Tr. (Chen) 109, 145-46.)  Accordingly, the Court will rely upon
Plaintiffs' testimony for those delivery estimates.

average delivery order cost roughly between $13 and $18 and the average pick-up or dine-in order cost approximately $8.50.[6]  (Tr. (Wang) 19-20; (Shen) 41-42; (Chen) 107, 110.)

Generally, Fresco Tortillas delivery workers kept all of the tips they received during their deliveries, with the exception of very large orders, in which case the tip for that order would be shared.  (Tr. (Shen) 39-40.)  In order to compensate the Plaintiffs for the tips the restaurant received in connection with orders made by credit card or online, Chen would pay Wang and Shen fifty dollars in cash for each day that they worked.  (Tr. (Liu) 78-79; (Chen) 139.)  While the fifty dollars was pro-rated based on the number of hours the delivery worker actually worked, it was not impacted by the value of the tips that the restaurant actually received.  (Tr. (Chen) 140-41.)  Starting in or about January 2015, Fresco Tortillas hired an additional delivery person: De Ling Wang.  (Tr. (Chen) 142; *see also* Ex. C at D000116.)  Fresco Tortillas' employee timesheets indicate that De Ling Wang received tips at a significantly higher rate than the Plaintiffs.  (*See, e.g.*, Ex. C at D000127, D000119.)  Chen claimed that he used to give his portion of the tips to De Ling Wang, due to her status as a young single mother, and that this accounted for the discrepancy in the tip amounts.  (Tr. (Chen) 142-43.)

---

[6] Wang and Shen testified that the average pick-up order cost approximately $18 to $19, and Wang testified that the average dine-in order cost approximately $13 to $14.  (Tr. (Wang) 19-20; (Shen) 41-42.)  At his deposition, however, Wang testified that he did not know what the cost of these orders were.  (Tr. (Wang) 21-22.)  Meanwhile, Shen testified that he was on the road for the majority of the workday and therefore, his knowledge of the pick-up and dine-in orders was based exclusively on the thickness of the stack of torn off receipts by the restaurant's cashier machine.  (Tr. (Shen) 45-50.)  In light of these discrepancies and based on the Court's perception of the Plaintiffs' testimony, the Court does not find Plaintiffs' testimony on this issue credible.

The Plaintiffs testified that in addition to their delivery duties, they assisted with the preparation of the restaurant's food.  (Tr. (Wang) 10-14; (Shen) 36-37.)  Chen admitted that the Plaintiffs would, at times, assist with clean-up but denied that they assisted with the preparation of food.  (Tr. (Chen) 211-13.)

C. Fresco Tortillas' Employment Records

Fresco Tortillas relied upon monthly employee time sheets covering the time period from January 2014 through September 2016.  (See Ex. C at D000043-304.)  Chen was responsible for creating and maintaining these time sheets.  (Tr. (Liu) 82, 92; (Chen) 103, 122.)  Chen testified that he received the blank forms from his accounting firm in or about 2013.  (Tr. (Chen) 132-33.)  The time sheets track hours of work per day, rate of pay, and the amount of tips earned each day, but they do not account for the cash tips delivery workers received during deliveries.  (Tr. (Chen) 122, 125.)  Chen testified that the records were generally accurate, however, he acknowledged that although the time sheets indicate that each employee started and ended work at the exact same time each day of that week, the start and end times could vary by five to ten minutes.[7]  (Tr. (Chen) 134.)  Chen also admitted that he would also work hours outside of the restaurant's official hours – which were not recorded in the time sheets – but denied that Plaintiffs ever worked those late hours with him.  (Tr. (Chen) 201-02.)

_____

[7] At trial, Plaintiffs attempted to introduce four meal delivery tickets from an online delivery service in order to impeach Defendants' witnesses regarding the duration of the delivery workers' shifts.  (Tr. (Chen) 170-81.)  These tickets were not produced during discovery. (Tr. 172-73.)  Furthermore, on their face, the tickets are not tied to any specific delivery worker and Plaintiffs did not testify as to the tickets' authenticity or origin.  Accordingly, the Court will not rely upon these tickets as evidence.  See, e.g., Washington v. Kellwood Co., No. 05 Civ. 10034, 2016 WL 5680374, at *3 (S.D.N.Y. Sept. 30, 2016) (excluding evidence that did not speak for itself where there was no foundational testimony).

The time sheets do not indicate that either Plaintiff worked for Fresco Tortillas prior to March 2015. (*See* Ex. C, Exs. 2-3.)  The space for the employee's signature was also blank on all of Plaintiffs' time sheets, although the time sheets for the restaurant's other employees were often signed. (*Compare* Ex. C at D000251, D000254, *with* D000259, D000306.)  Chen testified that Wang and Shen refused to sign their time sheets. (Tr. (Chen) 122-23.)

Defendants' records show that in March 2015, Wang worked from 6 p.m. to 10:30 p.m., four and one-half hours per day, for five days per week, receiving $891 for 99 hours of work. (Ex. 3 at D000124.)  He also received $990 in tips, for a total of $1,881.[8] (Ex. 3 at D000124.)  In April 2015, the records indicate that Wang worked from 6 p.m. to 10:30 p.m., four and one-half hours per day, typically, four days per week, receiving $810 for 90 hours of work. (Ex. 3 at D000130.)  He received $900 in tips, for a total of $1,710. (Ex. 3 at D000130.)  The records for May 2015 indicate that Wang worked from 6 p.m. to 10:30 p.m., four and one-half hours per day, for three to five days per week, for which he received $931.50 for 103.5 hours of work. (Ex. 3 at D000135.)  That month, Wang received $1,035 in tips, for a total of $1,966.50. (Ex. 3 at D000135.)  The records show that in June 2015, Wang worked from 5 p.m. to 10:30 p.m., five and one-half hours per day, for four to five days per week, for $1,089 for 121 hours of work. (Ex. 3 at D000140.)  He received $1,210 in tips, for a total of $2,299. (Ex. 3 at D000140.)

---

[8] Based on the parties' testimony, it is apparent that the tips indicated in the time sheets only refer to tips made in connection with credit card or online orders and did not include the cash tips the employees received during their deliveries. (Tr. (Chen) 125-26, 137-38.)

The records show that from July through September 2015 and in November 2015, Wang worked from 5 p.m. to 10:30 p.m., five and one-half hours per day, for five days per week.  (Ex. 3 at D000145, D000151, D000160, D000168.)  In July 2015, he received $1,089 for 121 hours of work, in addition to $1,210 in tips, for a total of $2,299.  (Ex. 3 at D000145.)  In August 2015, Wang received $1,039.50 for 115.5 hours of work, in addition to $1,155 in tips, for a total of $2,194.50.  (Ex. 3 at D000151.)  In September 2015, Wang received $1,089 for 121 hours of work, in addition to $1,210 in tips, for a total of $2,299.  (Ex. 3 at D000160.)  In October 2015, Wang worked from 6 p.m. to 10:30 p.m., for a total of four and one-half hours per day, for five days per week, receiving $891 for 99 hours of work.  (Ex. 3 at D000166.)  He also received $990 in tips, for a total of $1,881.  (Ex. 3 at D000166.)  In November 2015, Wang received $990 for 110 hours, in addition to $1,100 in tips for a total of $2,090.  (Ex. 3 at D000168.)  In December 2015, Wang worked from 11 a.m. to 5 p.m., for a total of six hours per day, for three to five days per week, receiving $1,242 for 138 hours of work.  (Ex. 3 at D000178.)  Wang also received $1,380 in tips, for a total of $2,622.  (Ex. 3 at D000178.)  In January 2016, Wang worked from 6 p.m. to 10:30 p.m., four and one-half hours per week, for five days per week, receiving $850.50 for 94.5 hours of work.  (Ex. 3 at D000251.)  Wang also received $945 in tips, for a total of $1,795.50.  (Ex. 3 at D000251.)  In February 2016, Wang worked from 12 p.m. to 5 p.m., five hours per day, for five days per week, receiving $945 for 105 hours of work.  (Ex. 3 at D000254.)  Wang also received $1,050 in tips, for a total of $1,890.[9]  (Ex. 3 at D000254.)

---

[9] The February 2016 record shows Defendants paid Wang a total of $1,890, however, $945 added to $1,050 equals $1,995.  The Court notes the faulty calculation.

Defendants' records also show that from August through October 2015, Shen worked from noon to 5 p.m., five hours of work per day, for five days per week, receiving $990 for 110 hours of work.  (Ex. 3 at D000150, D000159, D000164.)  All three months, Shen also received $1,100 in tips, for a total of $2,090 per month.  (Ex. 3 at D000150, D000159, D000164.)  In November 2015, Shen worked from noon to 5 p.m., five hours of work per day, for four to five days per week, receiving $945 for 105 hours of work.  (Ex. 3 at D000173.)  Shen also received $1,050 in tips, for a total of $1,995 per month.  (Ex. 3 at D000173.)  In December 2015, Shen worked from 5 p.m. to 10:30 p.m., five and one-half hours of work per day, for three to five days per week, receiving $891 for 99 hours of work.  (Ex. 3 at D000177.)  Shen also received $990 in tips, for a total of $1,881 (Ex. 3 at D000177.)  In January 2016, Shen worked from noon to 6 p.m., for a total of six hours per day, for five days per week, receiving $864 for 96 hours of work.  (Ex. 3 at D000250.)  Shen also received $960 in tips, for a total of $1,824.  (Ex. 3 at D000250.)

There are inconsistencies and contradictions through Defendants' renditions of the facts.  First, the time sheets indicate that each Plaintiff worked between four and one-half to six hours per day.  But Chen testified that on most days, each delivery person worked a single shift of five to eight hours.  (Tr. (Chen) 208-09.)  He stated that Wang switched between the early shift and the late shift, and that typically, Shen worked from around noon to five.  (Tr. (Chen) 125, 208-09.)  Liu testified that each delivery person worked eight hours per day, including their break time.  (Tr. (Liu) 80-81.)  In contrast, Plaintiffs testified that they worked from 11 a.m. to 11 p.m., i.e., twelve hours per day, six days per week, for a total of seventy-two hours per week.  (Tr. (Wang) 8-9; (Shen) 36.)

9

The time sheets also indicate that each Plaintiff typically received in excess of $1,800 per month in wages and tips from Fresco Tortillas.  But Shen testified that he was initially paid $1,100 per month and approximately six months into his employment, his salary increased to $1,200 per month.  (Tr. (Shen) 35-36.)  Wang testified that he was paid $1,200 per month during his first year of employment, but after one year, his salary was increased to $1,300 per month.  (Tr. (Wang) 14-17.)  Liu's testimony actually contradicted Fresco Tortilla's time sheets and affirmed that the delivery people, collectively, made $2,500 and that Wang's base salary was $1,300.  (Tr. (Liu) 89-90.) The wages indicated in the time sheets are also wildly inconsistent with the salaries stated in the company's tax returns.  (*See* Ex. A at D000001, D000011, D000460.)

The parties also dispute the duration of time that Wang and Shen were actually employed as full-time workers at Fresco Tortillas.  Wang testified that he started working full-time at Fresco Tortillas in August of 2012 and that he stopped working in the very beginning of March of 2016.  (Tr. (Wang) 8-9, 16.)  Liu testified that that Wang started working for Fresco Tortillas part-time in 2012 and he switched to full-time work during the second half of 2015.  (Tr. (Liu) 80).  Chen, however, testified that Wang was hired at the end of 2014 or the beginning of 2015 and that prior to that time, Wang occasionally worked at the restaurant, but only for a day at a time.  (Tr. (Chen) 129, 167.)  Meanwhile, the time sheets available for Wang are from March 2015 until March 2016 and do not indicate that Wang worked either part-time or full-time prior to then.  (*See* Ex. 3.)  Shen testified that he was hired in August 2014 and worked for Fresco Tortillas until January 2016.  (Tr. (Shen) 34, 41); *see also* (Tr. (Wang) 19.)  Chen testified that Shen's full-time employment commenced during the summer of 2015, and prior to then, Shen

occasionally worked for the restaurant, but only for a day or so at a time.  (Tr. (Chen) 123-24, 167.)  Meanwhile, Fresco Tortillas' records indicate that Shen's employment began during the summer of 2015, but do not indicate that he was previously employed at the restaurant in any capacity.  (Ex. C at D000150.)

In light of the numerous discrepancies between Defendants' testimony and Fresco Tortillas' records, the Court finds neither Defendants' testimony nor the records to be entirely reliable.  By contrast, Wang and Shen's testimony on their employment history was internally consistent and their demeanor was credible.  The Court, therefore, credits the testimony of the Plaintiffs regarding their weekly work hours, their salary, and the duration of their employment.

D.  <u>Wang's Employment</u>

Wang was employed as a delivery worker at Fresco Tortillas from August 1, 2012 through February 29, 2016 (approximately 43 months).  (Tr. (Wang) 8-9, 16.)  From August 1, 2012 through July 31, 2013, Wang received $1,200 per month in wages.  (Tr. (Wang) 14-17.)  From August 1, 2013 until the end of February 29, 2016, Wang received $1,300 per month in wages.  (Tr. (Wang) 14-17.)  Wang received between forty dollars and fifty dollars in cash tips each day he worked.  (Tr. (Wang) 15.)  During this entire period, Wang worked twelve hour shifts for six days per week.  (Tr. (Wang) 8-9.)  Wang also testified that he purchased a bike for use at Fresco Tortillas for $1,400 and spent approximately $100 per month on maintenance and $1,800 on replacement batteries. (Tr. (Wang) 15-16.)

E.  Shen's Employment

Shen was employed as a delivery worker at Fresco Tortillas from August 26, 2014 until January 31, 2016.  (Tr. (Wang) 19; (Shen) 34, 41.)  From August 26, 2014 through January 2015, Shen was paid $1,100 per month in wages.  (Tr. (Shen) 35-36.)  From the end of January 2015 through the end of January 2016, Shen was paid $1,200 per month in wages.  (Tr. (Shen) 35-36.)  He received between forty and fifty dollars in cash tips per day.  (Tr. (Shen) 40.)  During this entire period, Shen worked twelve hour shifts for six days per week.  (Tr. (Shen) 36.)  Shen also testified that in connection with his employment, he purchased a bike for between $1,420 and $1,450 and paid for maintenance and new batteries for that bike.  (Tr. (Shen) 40.)

F.  Break Times

Liu testified that the workers' break time was typically from three to four in the afternoon, and that breaks would also be granted during the late shift if the shift was not too busy.  (Tr. (Liu) 81.)  Chen testified, however, that the delivery workers were permitted to take breaks – and sometimes took long breaks – when they were not making deliveries, but acknowledged that there were no set break times.  (Tr. (Chen) 128-29.)  By contrast, Plaintiffs testified that they did not have any specific times set aside for meals, and that they ate their meals during brief ten minute breaks between deliveries and other work.  (Tr. (Wang) 12-13; (Shen) 36-38.)  Based on their demeanor and consistency, the Court accepts Plaintiffs' characterization of their breaks.

G.  Wage and Tip Credit Notices

Plaintiffs testified that they never signed or received any notices of their wages or other forms related to employment.  (Tr. (Wang) 14-15; (Shen) 38, 41.)  Shen testified

that he learned what his compensation was for the first time when he was paid.  (Tr. (Shen) 34-35.)  Wang testified that Liu informed him of his base pay, noting that he "kind of know how much it pays, this type of work, even though . . . [i]t's not a written rule or anything."  (Tr. (Wang) 10-11.)  Defendants dispute this account, claiming that Plaintiffs were aware that their tips counted as part of their salary and that Chen discussed their wages with the delivery workers prior to their start date.  (Tr. (Chen) 125-27, 138.)  Chen testified that Shen "realized that tips is part of the salary, and later on [Shen] told me, he said I know for a fact that the tips at your restaurant is very good."  (Tr. (Chen) 126.)  Chen also testified that from 2012 onwards, he posted a notice setting forth the relevant labor law requirements in both English and Chinese (Tr. (Chen) 121, 161-64), although Wang could not recall seeing any such notice.  (Tr. (Wang) 14.)

Based on Plaintiffs' testimony and the absence of any documentary evidence to support Defendants' claims, the Court finds that the Plaintiffs did not receive wage notices or statements and were not informed that their tips would offset the statutory minimum wage and overtime requirements.

## Conclusions of Law

Having made the necessary factual findings, the Court turns now to the parties' legal contentions.  The Court will address, in turn, whether Fresco Tortillas qualifies for FLSA liability, the Plaintiffs' claims under the NYLL and the FLSA, and their damages.

A.    FLSA Coverage Requirements

Defendants argue that Fresco Tortillas did not qualify as an "enterprise engaged in interstate commerce" under the FLSA, and thus the restaurant is not subject to the FLSA's wage-and-hour provisions.    (Defendants' Proposed Findings of Fact and

Conclusions of Law ¶ 34-36.)  Based on the evidence presented at trial, however, the Court finds that Fresco Tortillas meets the requirements for enterprise coverage under the FLSA.

1. Applicable Law

The FLSA's minimum wage and overtime provisions apply to employees who are "employed in an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 207(a)(1).  To prove that he is a covered employee, the plaintiff must establish that his employer is an "enterprise" (i) which "has employees engaged in commerce or in the production of goods for commerce, or . . . employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person"; and (ii) "whose annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated)." 29 U.S.C. § 203(s)(1)(A).

If the plaintiff can satisfy the second prong by showing that the enterprise does the "requisite dollar volume of business," i.e., $500,000 every year, the first prong is rarely difficult to establish "because it is met by showing that two or more employees 'have handled . . . materials that have been moved in . . . commerce.'" *Jacobs v. New York Foundling Hospital*, 577 F.3d 93, 99 n.7 (2d Cir. 2009) (alterations in original) (citing 29 U.S.C. §203(s)(1)(A)(i)); *see also Shen*, 2016 WL 7217850, at *2 (noting that the first prong is "satisfied as long as the employer purchases or uses supplies that have at some point moved in interstate commerce.")  The plaintiff bears the burden of establishing coverage under the FLSA by a preponderance of the evidence.  *De Xiong Pan v. Wei Plumbing, Inc.*, No. 12 Civ. 1781, 2013 WL 6053496, at *13 (S.D.N.Y. Nov. 13, 2013).

14

2. Analysis

Defendants claim that Fresco Tortillas does not qualify as an enterprise engaged in interstate commerce under the FLSA because their annual gross volume of sales made or business done is less than $500,000.  Defendants offer Fresco Tortillas' federal and state corporate income tax returns as proof that the company never achieved an annual gross business volume of $500,000.  Plaintiffs contest the accuracy of the tax returns, arguing that the returns misrepresent the salaries of the restaurant's employees and significantly understate the company's gross annual sales.[10]

Fresco Tortillas' federal corporate income tax returns reflect annual gross sales of: (i) $241,472 for the period of July 1, 2013 through June 30, 2014 (Ex. A at D000001); (ii) $313,892 for the period of July 1, 2014 through June 30, 2015 (Ex. A at D000011); and (iii) $299,576 for the period of July 1, 2015 through June 30, 2016 (Ex. A at D000460).  As previously noted by this Court, "tax returns are not dispositive and the veracity of those documents can be questioned by a Plaintiff."  *Shen*, 2016 WL 7217850, at *3 (quoting *Jia Hu Qian v. Siew Foong Hui*, No. 11 Civ. 5584, 2013 WL 3009389, at *3 (S.D.N.Y. June 14, 2013)).  While both Lui and Chen testified that the tax returns were filed as they were produced here (Tr. (Liu) 62-64; (Chen) 189-91), the returns are not signed by the individual Defendants nor are they accompanied by affidavits from tax preparers attesting to their authenticity and accuracy.  Both of these factors caution against accepting the tax returns as trustworthy indicators.  *See Monterossa v. Martinez Restaurant Corp.*, No. 11

---

[10] As evidence of Fresco Tortillas' revenue, Defendants also admitted into evidence copies of bank statements from July 2015 through October 2016 with total monthly deposits ranging from $17,451.66 to $24,581.89.  (Ex. B.)  The bank accounts, however, only date back to July 2015, and therefore, do not cover much of the relevant time period.

Civ. 3689, 2012 WL 3890212, at *4 (S.D.N.Y. Sept. 7, 2012) ("[T]here is good reason to be cautious in relying on Defendants' tax returns because . . . the submitted returns are unsigned and unaccompanied by a statement or affidavit of the tax preparer.").

There are also obvious inconsistencies between Fresco Tortillas' tax returns and Defendants' testimony and additional evidence.  For instance, Chen testified that in 2015, the annual salary for himself and his wife was between $40,000 and $50,000.  (Tr. (Chen) 193-94.)  Liu testified that Fresco Tortillas paid roughly $60,000 in wages to its other employees.  (Tr. (Liu) 87-88.)  The tax returns indicate, however, that Fresco Tortillas paid its officers (i.e., Liu and Chen) $28,810 in the 2013 fiscal year, $25,400 in the 2014 fiscal year, and $30,800 in the 2015 fiscal year.  (Ex. A at D000001, D000011, D000460.)  The returns also represent that Fresco Tortillas paid $8,480 in salaries and wages in the 2013 fiscal year, $12,237 in the 2014 fiscal year, and $21,151 in the 2015 fiscal year.  (Ex. A at D000001, D000011, D000460.)  Given the disparity between the tax records and Defendants' own testimony, the Court finds that Fresco Tortillas' tax returns are not reliable evidence of Fresco Tortilla's profits.  *See Amaya v. Superior Tile & Granite Corp.*, No. 10 Civ. 4525, 2012 WL 130425, at *4 (S.D.N.Y. Jan. 17, 2012) (finding that the defendant's tax returns were unreliable, where they were inconsistent with a business of its size and employee salary amounts).

Furthermore, even using the more conservative estimates testified to at trial, it is clear that Fresco Tortillas met the FLSA sales threshold during the applicable period.  For instance, Chen testified that there were approximately twenty dine-in orders per day and approximately fifty pick-up orders per day at an average cost of approximately $8.50.  (Tr. (Chen) 107-10.)  Wang and Shen testified that, collectively, they made approximately

16

seventy to eighty deliveries per day.  (Tr. (Wang) 17-18; (Shen) 41.)  Chen testified that

the average delivery order cost approximately thirteen or fourteen dollars.  (Tr. (Chen)

107.)  Accepting that Fresco Tortillas was open three hundred sixty one days per year

(Tr. (Chen) 206-07), based on these estimates, Fresco Tortillas would have made $1,505

in sales per day for a total of $543,305 gross sales per year.[11]  This is above the FLSA's

$500,000 threshold.[12]

B.    Recordkeeping and Wage Statement Claims

Plaintiffs contend that, throughout the duration of their employment, Defendants

failed to provide them with the requisite wage statements or a wage notice, and they are

therefore entitled to additional statutory damages under the NYLL.  (Plaintiffs' Proposed

Findings of Fact and Conclusions of Law ("Pl. FF&CL") ¶ 121-32.)  The Court agrees.

---

[11] This, the lowest possible calculation, assumes that Chen accurately testified to the number of days the restaurant was open, although as noted above, there is reason to believe the restaurant may have been open on additional dates – in which case, the restaurant's gross annual sales would have been slightly higher.  The calculation also does not include deliveries made by other employees, such as Chen, which would further increase Fresco Tortillas' revenue.

[12] Even if Fresco Tortillas did not meet the FLSA's requirements, the Court would exercise supplemental jurisdiction over the remaining state-law claims.  Where all of the federal claims in an action have been dismissed, a court must consider whether continuing to exercise supplemental jurisdiction over any remaining state-law claims "serves the interests of economy, convenience, fairness and comity."  *Bray v. City of New York*, 356 F. Supp. 2d 277, 285 (S.D.N.Y. 2004) (citing *Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 140 F.3d 442, 446-47 (2d Cir. 1998)).  Exercising supplemental jurisdiction may be appropriate where there has been a "substantial expenditure in time, effort, and money in preparing the dependent claims."  *Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 56 (2d Cir. 2004).  There is a "particularly strong case for retaining jurisdiction. . . [after a court] has conducted a trial on the merits."  *Id.* at 56-57; *see also Marcelino v. 374 Food, Inc.*, No. 16 Civ. 6287, 2018 WL 1517205, at *11 (S.D.N.Y. March 27, 2018) ("[G]iven that this Court has already conducted a trial on the merits, the factors of convenience and judicial economy weigh strongly in favor of this Court's continued exercise of supplemental jurisdiction.").

1. <u>Wage Notice Requirement</u>

The NYLL, through the Wage Theft Prevention Act (or "WPTA"), requires employers to provide each employee with a written notice of (i) the employee's rate of pay; (ii) the overtime rate of pay; (iii) the basis for the employee's pay (e.g., hourly, daily, weekly, salary, commission, and so forth); (iv) all allowances claimed as part of the minimum wage (e.g., tips, meals, or lodging allowances); (v) the employee's regular pay day; (vi) the name of the employer, including whether the employer is "doing business" under any other name; (vii) the employer's address; and (viii) the employer's telephone number.  N.Y. Lab. Law § 195(1)(a).

Such notice must be provided "within ten business days of the start of employment."  *Kone v. Joy Construction Corp.*, No. 15 Civ. 1328, 2016 WL 866349, at *5 (S.D.N.Y. March 3, 2016) (internal quotation marks and citation omitted).  The written notice must also be provided in English and the employee's primary language.  N.Y. Lab. Law § 195(1)(a).  Pursuant to a 2014 amendment to the WTPA, an employer who fails to provide notices at the time of hiring is liable for a maximum of $5,000, accruing at a rate of $50 for each day not received.  N.Y. Lab. Law § 198(1-b); *see also Java v. El Aguila Bar Restaurant Corp.,* No. 16 Civ. 6691, 2018 WL 1953186, at *12 (S.D.N.Y. April 25, 2018) ("Since February 27, 2015, an employee who was not provided a wage notice within ten business days of the first day of employment can recover damages of $50 for each workday that a violation occurs or continues to occur, not to exceed $5,000.") (citation omitted).  Before the 2014 amendment, from April 9, 2011, through February 26, 2015, employers were liable for $50 each week the wage notice was not provided, with a

maximum penalty of $2,500.  *Demirovic v. Ortega*, No. 15 CV 327, 2018 WL 1935981, at *6 (E.D.N.Y. April 24, 2018).

As discussed above, Plaintiffs did not receive wage notices for the duration of their employment.  Accordingly, each Plaintiff is entitled to recover $5,000, as each Plaintiff was not properly provided notice for a number of workdays that, when multiplied by $50 per day, far exceeds the statutory maximum of possible liability of $5,000.

2.  Wage Statement Requirement

New York law also requires employers to provide a statement with each payment of wages containing (i) the dates the payment of wages covers; (ii) the name of both the employee and employer; (iii) the employer's address and telephone number; (iv) the rate and basis of pay; (v) gross wages; (vi) deductions; (vii) allowances (if applicable); and (viii) net wages.  N.Y. Lab. Law § 195(3).  "Until February 27, 2015, an employer's failure to provide proper wage statements was a violation for which plaintiffs could receive $100 per work week in damages, with a cap of $2,500."  *Gamero v. Koodo Sushi Corporation*, 272 F. Supp. 3d 481, 511 (S.D.N.Y. 2017) (internal quotation marks omitted).  Following the 2014 amendment to the WTPA, an employer who fails to provide the required wage statement is liable to the employee for $250 per each day that the violation occurs, up to a maximum of $5,000.  N.Y. Lab. Law § 198(1-d).

Fresco Tortillas produced time keeping records for only part of the relevant time period, and those statements did not contain all of the required information, such as the restaurant's name and address.  (*See* Ex. C.)  Nor does it appear that these time sheets were given to the employees such that they would constitute a wage statement.  Furthermore, the testimony at trial significantly undercut the validity of those records.

19

Accordingly, Wang and Shen are each entitled to damages for Defendants' failure to provide wage statements, as required by New York law.  Since each Plaintiff worked at Fresco Tortillas for more than twenty days after the 2014 amendment's effective date, Defendants' liability exceeds the statutory maximum liability of $5,000, and Wang and Shen are each entitled to the statutory maximum award of liability of $5,000.

C.   Overtime Claims

The Court finds that Plaintiffs have carried their burden of showing, by a preponderance of the evidence, that Defendants violated the FLSA and the NYLL's overtime provisions.

1.   Applicable Law

Under the FLSA, an employee bears the burden of proving that he was not properly compensated for his work.  *Daniels v. 1710 Realty LLC*, 497 Fed App'x 137, 139 (2d Cir. 2012).  "Where an employer's payroll records are inaccurate or incomplete, courts apply a burden-shifting scheme to determine whether an employee has established that he was underpaid, and what damages he suffered."  *Marcelino v. 374 Food, Inc.*, No. 16 Civ. 6287, 2018 WL 1517205, at *15 (S.D.N.Y. March 27, 2018).  In such instances, "an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference."  *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 362 (2d Cir. 2011) (quoting *Anderson v. Mount Clemens Pottery Co.*, 328 U.S. 680, 687 (1946)).  The Second Circuit has noted that this burden "is not high" and may be satisfied through an employee's "estimates based on his own recollection."  *Id.* at 362.

If an employee satisfies this initial showing, the burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. ___, 136 S. Ct. 1036, 1047 (2016). "If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result may only be approximate." *Gonzalez v. Masters Health Food Service Inc.*, No. 14 Civ. 7603, 2017 WL 3835960, at *16 (S.D.N.Y. July 27, 2017) (internal quotations omitted) (quoting *Kuebel*, 643 F.3d at 362); *see also Hosking v. New World Mortgage, Inc.*, 570 F. App'x 28, 32 (2d Cir. 2014) (noting "that the employee's burden of proving damages under the FLSA is minimal, particularly when the employer does not keep records")

The NYLL applies a similar framework to unpaid compensation claims, except that Section 196-a provides that "where an employer fails to 'keep adequate records or provide statements of wages to employees as required' by the statute, the employer 'shall bear the burden of proving that the complaining employee was paid wages, benefits and wage supplements.'" *Gamero*, 272 F. Supp. 3d at 498 (quoting NYLL § 196-a(a)).

2. <u>Analysis</u>

The Court previously found that Defendants did not maintain accurate records of Plaintiffs' hours worked and that their testimony was both conflicting and at odds with their own time sheets. By contrast, Plaintiffs have consistently testified that they worked more than forty hours per week. Defendants, on the other hand, have not provided any evidence of the precise amount of work performed by Plaintiffs or any evidence to negate the facts as set forth in Plaintiffs' testimony.

Therefore, the Court finds that that Plaintiffs have carried their burden of demonstrating that they are entitled to compensation for unpaid overtime work.

D.   <u>Minimum Wage Violations</u>

The FLSA and the NYLL each require an employer to pay not less than a statutorily-set minimum wage for each hour of work.  *See* 29 U.S.C. § 206(a)(1); N.Y. Lab. Law § 652(1); 12 N.Y.C.R.R. § 146-1.2.  In order to assess whether an employee has been paid minimum wage, a court must determine the employee's hourly rate, also called the "regular rate" of pay.  *Java*, 2018 WL 1953186, at *10.

To determine whether the defendants violated the FLSA's or the NYLL's minimum wage provisions, the Court must first address (i) whether Defendants are entitled to take a tip credit against their minimum wage and overtime obligations for tips received by the delivery workers; (ii) whether Plaintiffs, during their workdays, took breaks that do not qualify as work time and therefore are not compensable time under the statutes; and (iii) the Plaintiffs' 'regular rate' of pay.

1.   <u>Tip Credit</u>

Under "'[b]oth the FLSA and the NYLL,'" an employer may "'pay a tipped worker a cash wage that is lower than the statutory minimum wage, provided that the cash wage and the employee's tips, taken together, are at least equivalent to the minimum wage[,]'" and "'[t]his allowance against the minimum cash wage is known as a 'tip credit.'"  *Gamero*, 272 F. Supp. 3d at 500 (*quoting Inclan v. New York Hospital Group, Inc.*, 95 F. Supp. 3d 490, 497 (S.D.N.Y. 2015)).  An employer may not take a tip credit unless (1) "such employee has been informed by the employer of the [tip credit] provision[]"; and (2) "all tips received by such employee have been retained by the employee."  29 U.S.C. §

203(m)(2)(A)(ii).  This provision is strictly construed.  *Hernandez*, 2016 WL 3248493, at
*23.  Under both the FLSA and the NYLL, the burden is on the employer to show that they
have complied with the tip credit requirements.  *Valle v. Gordon Chen's Kitchen LLC*, 254
F. Supp. 3d 665, 672-73 (S.D.N.Y. 2017).  Under the NYLL, notice of the tip credit must
be in writing.  12 N.Y.C.R.R. § 146-2.2(a); *accord Inclan*, 95 F. Supp. 3d at 498.
Moreover, once an employer has provided written notice of this tip credit, the employer
must obtain "acknowledgement of receipt signed by the employee," and that signed
acknowledgement must "be kept on file for six years."  12 N.Y.C.R.R. § 146-2.2(c).
"'Courts in and outside of this District 'have interpreted the notice provision to require at
the very least notice to employees of the employer's intention to treat tips as satisfying
part of the employer's minimum wage obligations.'"  *Hernandez v. Jrpac Inc.*, No. 14 Civ.
4176, 2016 WL 3248493, at *23 (S.D.N.Y. June 9, 2016) (quoting *Copantitla v. Fiskardo
Estiatorio, Inc.*, 788 F. Supp. 2d 253, 287 (S.D.N.Y. 2011) (internal citations and quotation
marks omitted)).

Defendants have not satisfied these notice requirements and were therefore not
entitled to take tip credits from Plaintiffs' wages under the FLSA or the NYLL.  First, Fresco
Tortillas cannot demonstrate that the Plaintiffs received all of their tips, as it appears that
Fresco Tortillas' delivery workers received the same amount in tips for the online and
credit card tips each day, regardless of the amount of tips actually received by the
restaurant.  (Tr. (Chen) 138-41.)

Second, Defendants did not comply with either statute's notice requirement.  The
FLSA required Defendants to notify Plaintiffs the tip credit provision, and the Court must
"strictly construe" this requirement against Defendants.  *Inclan*, 95 F. Supp. 3d at 497.  At

most, Chen told Plaintiffs that they would be receiving tips as part of their salary.  (Tr. (Chen) 125-26, 130, 138.)   Chen did not testify, nor does the Court believe, that he communicated to Plaintiffs that any tips they received would be credited against their wages in order to achieve the minimum wage.  *See Hernandez*, 2016 WL 3248493, at *24 (no tip credit where plaintiffs were never told that their wages would be below the minimum wage); *Copantitla*, 788 F. Supp. 2d at 288 (restaurant was not entitled to take tip credit despite "informing employees that they would receive an hourly rate plus tips" and "posting notices about the minimum wage laws," because restaurant did not tell its employees that it "intended to use tips to satisfy its minimum wage obligations").   And Defendants patently did not comply with the NYLL's provision, which required Defendants to give Plaintiffs written notice of the tip credit and to obtain a signed acknowledgment from each Plaintiff and retain it for six years.  Accordingly, the Defendants may not take advantage of the tip credit.

2. Meal Breaks

Under both the FLSA and NYLL, "all of the time worked during a continuous workday is compensable, save for bona fide meal breaks."  *Hart*, 60 F. Supp. 3d at 475 n.15 (citing *IBP, Inc. v. Alvarez*, 546 U.S. 21 (2005)); *see Reich v. Southern New England Telecommunications Corp.*, 121 F.3d 58, 64-65 (2d Cir. 1997) (interpreting 29 C.F.R. § 785.19).  For a break to so qualify, the employee "must be completely relieved from duty for the purposes of eating regular meals."  29 C.F.R. § 785.19  "Ordinarily 30 minutes or more is long enough for a bona fide meal period," *id.*, but "[r]est periods of short duration, running from 5 minutes to about 20 minutes . . . are customarily paid for as working time [and] must be counted as hours worked."   29 C.F.R. § 785.18.  As stated above,

24

Defendants' testimony regarding meal breaks lacked consistency, and thus the Court accepts Plaintiffs' testimony that they did not take any meal breaks.  Accordingly, the Court finds that all of Plaintiffs' time worked was compensable.

3.  <u>Minimum Wage Violations</u>

The remaining question then is whether Plaintiffs' "regular rate" of pay was less than the applicable minimum wage.  Under the FLSA, the "regular rate" of pay is determined by "dividing an employee's total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked." *Romero v. Anjdev Enterprises., Inc.*, No. 14 Civ. 457, 2017 WL 548216, at *10 (S.D.N.Y. Feb. 10, 2017) (alteration omitted) (citing 29 C.F.R. § 778.109).  Similarly, under the NYLL, the 'regular rate' of pay of an employee in the hospitality industry (which includes restaurants) is calculated "by dividing the employee's total weekly earnings, not including exclusions from the regular rate, by the lesser of 40 hours or the actual number of hours worked by that employee during the work week."  12 N.Y.C.R.R. § 146-3.5(b).  "Under both the FLSA and NYLL, once the Court determines the 'actual number of hours worked' per week and calculates the 'regular rate' based on those hours, the 'regular rate' is then compared to the statutorily-imposed minimum wage to determine whether the employee has been underpaid."  *Java*, 2018 WL 1953186, at *10.

Since 2009, the minimum wage under the FLSA has been $7.25 per hour.  29 U.S.C. § 206(a)(1)(C).  During the relevant period, the minimum wage under New York law has been as follows:

- $7.25 from July 24, 2009 to December 30, 2013;

- $8.00 from December 31, 2013 through December 30, 2014;

- $8.75 from December 31, 2014 through December 30, 2015;

- $9.00 from December 31, 2015.

N.Y. Lab. Law § 652.  The Court has discretion to award Plaintiffs damages under either

the NYLL or the FLSA; whichever provides the greatest relief.  *See Gamero*, 272 F. Supp.

3d at 498.  Thus, the Court shall employ the relevant New York State minimum wage to

calculate damages.

Defendants paid the Plaintiffs a fixed monthly salary which, based on the hours the

Court has found the Plaintiffs worked, amounted to a regular rate of pay as follows.

Wang's regular rate of pay for the period from August 2012 through July 2013 was $6.92,

and his regular rate of pay for the period from July 2013 through the end of February 2016

was $7.50.[13]  Shen's regular rate of pay for the period from August 2014 through January

2015 was $6.35 and his regular rate of pay from February 2015 through January 2016

was $6.92.   Therefore, for the entire period of employment at Fresco Tortillas, both

Plaintiffs' "regular rate" of pay fell below the minimum wage required by the NYLL and

their weekly work hours exceeded forty hours per week.  Accordingly, the Court concludes

that Wang and Shen are entitled to damages under the minimum wage and overtime

provisions of the NYLL.

   4.  Spread of Hours Violations

Plaintiffs also seek damages for "spread of hours" compensation under the NYLL.

The "spread of hours" provision of the NYLL entitles employees to one additional hour of

---

[13] *E.g.*, from August 2012 through July 2013, Wang had a monthly salary of $1,200.  To
find the weekly earnings, $1,200 is multiplied by 12 (months in a year) and then divided
by 52 (weeks in a year).  Wang's weekly earnings were $276.92.  To find the 'rate of pay,'
$276.92 is divided by 40 (work hours in a week provided by statute).  Thus, Wang's "rate
of pay" for August 2012 through July 2013, was $ 6.92.

pay at the minimum hourly wage when the interval between the beginning and end of an employee's workday exceeds ten hours.  12 N.Y.C.R.R § 142-2.4.

The Court finds that Defendants are liable for unpaid spread-of-hours pay as to both Plaintiffs.  As described above, Wang and Shen worked twelve-hour shifts for six days of the week for the entire duration of their employment at Fresco Tortillas, and therefore, they are entitled to overtime pay at a rate of one-half times their regular rates of pay, 12 N.Y.C.R.R. § 142-2.2, and "spread of hours" pay.

5. <u>Claims for Recovery of Equipment Costs</u>

a. <u>Applicable Law</u>

Plaintiffs assert they are entitled to the recovery of costs incurred in purchasing and maintaining their so-called tools of the trade: bicycles.  (Pl. FF&CL ¶ 133-39.)  Under the FLSA, employers may shift the cost of purchasing tools of the trade to the employee if doing so does not reduce the employee's wages below the minimum wage or lower the amount of overtime pay due to the employee.  29 C.F.R. § 531.35 ("[I]f it is a requirement of the employer that the employee must provide tools of the trade which will be used in or are specifically required for the performance of the employer's particular work, there would be a violation of the [FLSA] in any workweek when the cost of such tools purchased by the employee cuts into the minimum or overtime wages required to be paid him under the [FLSA]"); 29 C.F.R. § 531.32(c).  Vehicles, including bicycles and motorcycles, can be considered "tools of the trade if employees are required to possess and utilize them in the course of their employment." *Guan Ming Lin v. Benihana National Corp.*, 755 F. Supp. 2d 504, 511 (S.D.N.Y. 2010); *see also Yu G. Ke v. Saigon Grill, Inc.*, 595 F. Supp. 2d 240, 257-58 (S.D.N.Y. 2008) (bicycles qualified as "tools of the trade" where delivery

workers were required to purchase bicycles and the bicycles were a necessary component of their job).

>    b.  Analysis

This case may be distinguished from other cases involving delivery workers because, here, Plaintiffs did not testify that Defendants required them to use bicycles in the course of their deliveries or that the bicycles were necessary for them to complete their work.   Accordingly, Plaintiffs are not entitled to recover damages for their expenditures.  *See Huo v. Go Sushi Go 9th Ave.*, No. 13 Civ. 6573, 2014 WL 1413532, at *3-4 (S.D.N.Y. April 10, 2014) (plaintiff's conclusory allegations that he needed bicycle to deliver meals insufficient where he did not supply more detail about frequency of use, distance required to be traveled, or problems presented by absence of a bicycle).

>  6.  Damages

Having found liability, the Court now turns to the question of damages.

>    a.  Statute of Limitations

>        i.  The FLSA Limitations Period

Any claim under the FLSA for unpaid minimum wages, unpaid overtime, or liquidated damages must be brought within two years after the cause of action accrued, or three years if the violation was willful.  29 U.S.C. § 255(a).  A violation is "willful" if the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute.  *Kuebel*, 643 F.3d at 366.  Courts have found violations to be "willful" where employers "were very hands-on in their management of restaurant operations" and would be unlikely not to know what hours deliverymen were working, *Yu G. Ke*, 595 F. Supp. 2d at 250, and where "they made no effort to learn about the FLSA's

requirements," *Jin M. Cao v. Wu Liang Ye Lexington Restaurant, Inc.*, No. 08 Civ. 3725, 2010 WL 4159391, at *2 (S.D.N.Y. Sept. 30, 2010).

Chen testified that he was aware that there were legal requirements for paying a minimum wage and overtime.  (Tr. (Chen) 121, 161-64.)  And both Chen and Liu were "hands on" employers, who would have been well-aware of their employees' hours.  The Court finds that Defendants either knew or should have known that their conduct was prohibited by law.  Accordingly, the appropriate limitations period for Plaintiffs' FLSA claims is three years.

ii.   <u>The NYLL Limitations Period</u>

A claim under the NYLL must be brought within six years.  N.Y. Lab. Law § 198(3); *accord Galeana v. Lemongrass on Broadway Corp.*, 120 F. Supp. 3d 306, 314 (S.D.N.Y. 2014).  Plaintiffs filed their complaint on March 17, 2016, meaning that all of their claims are well within the six year limitation period under NYLL.

b.   <u>Liquidated Damages</u>

Plaintiffs assert that they are entitled to liquidated damages.  Both the FLSA and the NYLL provide for liquidated damages.  An employer who violates the minimum wage and overtime provisions of the FLSA is presumptively liable to the affected employees, in addition to back-pay, for 100% of the unpaid wages as liquidated damages.  29 U.S.C. § 216(b) ("Any employer who violates the provisions . . . of this title [relating to minimum wages and overtime compensation] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation . . . and in an additional equal amount as liquidated damages.").  However, the employer may escape liability for such liquidated damages if the employer demonstrates that his

29

violation of the FLSA was committed "in good faith and that he had reasonable grounds for believing that his act or omission was not a violation" of the FLSA.  29 U.S.C. § 260.

The NYLL also provides for liquidated damages "unless the employer proves a good faith basis for believing that its underpayment of wages was in compliance with the law."  N.Y. Lab. Law § 198(1–a); *see also Garcia v. Giorgio's Brick Oven & Wine Bar*, No. 11 Civ. 4689, 2012 WL 3339220, at *4 (S.D.N.Y. Aug. 15, 2012) ("Effective April 9, 2011, Sections 198(1-a) and 663(1) of the NYLL were amended to provide for liquidated damages equal to one-hundred percent of the amounts underpaid.").  Plaintiffs may recover liquidated damages for unpaid wages under either the FLSA or NYLL, whichever provides for a greater recovery, see *Morales v. Mw Bronx, Inc.*, No. 15 Civ. 6296, 2016 WL 4084159, at *10 (S.D.N.Y. Aug. 1, 2016), but they are not entitled to a double recovery of liquidated damages.  *Rana v. Islam*, 887 F.3d 118, 123 (2d Cir. 2018) (per curiam) ("We therefore interpret the NYLL and FLSA as not allowing duplicative liquidated damages for the same course of conduct.").

Defendants have not presented any evidence indicating that their violations were committed in good faith.  To the contrary, Defendants were aware of the existence of regulations regarding overtime and minimum wage and chose to disregard them.  (*See* Tr. (Chen) 121, 161-64.)  Plaintiffs are, therefore, entitled to liquidated damages and they have elected to pursue those damages pursuant to the NYLL.

      c.  <u>Damages Calculations</u>

Although Defendants are liable under both statutes, Plaintiffs are only entitled to damages under one statute.  *See Gamero*, 272 F. Supp. 3d at 498.  The Court has discretion to award Plaintiffs damages under "the statute providing the greatest amount

of relief." *Id.* As New York's minimum wage was higher than the federal minimum wage during the relevant time period, "Plaintiffs' damages award under the NYLL necessarily will subsume their award under the FLSA." *Hernandez*, 2016 WL 3248493, at *31. Therefore, the Court will calculate Plaintiffs' recovery based on the difference between the wages Plaintiffs actually received and the New York state minimum wage in effect at the time. The Court has credited Plaintiffs' testimony that throughout their employment, they worked twelve hour shifts for six days per week. Based on his hours worked, his salary, and the applicable minimum wage, Wang is entitled to $85,695.30 in damages and an additional $85,695.30 in liquidated damages. Shen is entitled to $40,192.86 in damages and an additional $40,192.86 in liquidated damages. These damages include wages for unpaid overtime, "spread of hours" pay, and unpaid wages.

   d. <u>Prejudgment Interest</u>

  Plaintiffs are entitled to recover prejudgment interest on their unpaid wages under the NYLL, which is set at nine percent per year. N.Y.C.P.L.R. § 5004. The Court has discretion to choose a reasonable date from which prejudgment interest should accrue. *Santana v. Latino Express Restaurants, Inc.*, 198 F. Supp. 3d 285, 294-95 (S.D.N.Y. 2016). Courts "often choose the midpoint of the plaintiff's employment within the limitations period." *Gamero*, 272 F. Supp. 3d at 515 (internal quotation marks omitted); *accord Hernandez*, 2016 WL 3248493, at *36.

  The Court finds that use of a midpoint is appropriate in this case. Therefore, Plaintiffs are awarded prejudgment interest on their unpaid wage claims at a nine percent annual rate as follows: Wang shall be awarded prejudgment interest on all his NYLL claims arising from his time worked on or after May 15, 2014. Shen shall be awarded

prejudgment interest on all his NYLL claims arising from his time worked on or after May 15, 2015.  The parties are directed to submit for the Court's consideration a proposed calculation of damages based on the findings in this Decision and Order.

       e.  <u>Attorneys' Fees and Costs</u>

       Under the FLSA, a court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."  29 U.S.C. § 216(b); *see Jimenez v. KLB Food, Inc.*, 12 Civ. 6796, 2015 WL 3947273, at *1 (S.D.N.Y. June 29, 2015).  The NYLL also provides that a successful plaintiff may recover attorneys' fees and costs.  N.Y. Lab. Law §§ 198, 663(1).  Whether an attorneys' fee award is reasonable is within the discretion of the court.  *Black v. Nunwood, Inc.*, 13 Civ. 7207, 2015 WL 1958917, at *4 (S.D.N.Y. April 30, 2015).  Accordingly, by January 4, 2019, Plaintiffs shall submit a request for reasonable attorneys' fees and costs with supporting documentation.  Defendants shall submit their opposition, if any, by January 18, 2019.

Conclusion

       The Court finds that Plaintiffs are entitled to recover damages and attorneys' fees consistent with this Decision and Order.  By December 21, 2018, the parties shall submit a joint statement as to the amount of damages and interest thereon, and Plaintiffs shall submit their application for reasonable attorneys' fees and costs with supporting documentation.  The Court will then enter judgment in favor of Plaintiffs.

SO ORDERED.

_____
ROBERT W. LEHRBURGER
UNITED STATES MAGISTRATE JUDGE

Dated: November 26, 2018
        New York, New York

Copies transmitted to all counsel of record.